Mr. Justice CLIFFORD.
 

 This was an action of eject me at, . and the case comes ..before the Court upon a writ of error to the Circuit Court of the United States for the Northern District of Illinois; Suit w'as brought in the Court below by the present defendant against John Dredge, John A. Keys and Jesse Hester, to recover possession of a certain parcel of land described in the declaration as part of claims forty-five and sixty-nine, and part of claims sixty-two and sixty three, in the village of Peoria, in the State of Illinois, and also by metes and bounds. Plaintiff alleged that on the first day of July, 1855,- he was possessed of the described tract, and that the defendants on the following day entered into the premises, and have ever since that time unlawfully withheld the same. Defendants appeared and pleaded the general issue and by coisent of parties their landlord, Charlea
 
 *565
 
 Ball anee, was, on the twenty-third day of July, 1856, made a eo-defendant in the suit. Issue being joined, the parties went to trial, and the jury returned their verdict in favor of the plaintiff, and judgment was subsequently entered on the verdict; but upon’motion of the defendants, and satisfactory proof exhibited by them that, they had paid all the taxable costs, the judgment was vacated and set aside by the order of the Court, and a new trial was granted. No further proceedings were ,had in the cause until the July Term, 1857, when the parties again went to trial upon the general issue. Title was claimed by the plain tiff under a patent from the United States to the legal representatives of one Antoine Lapance, who was an inhabitant or settler within the purview of the Act of the third of March, 1823, entitled “An Act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.- He accordingly introduced the patent, and deraigned his title from the patentees therein described. Recurring to the patent, it will be seen that it bears date the first day of February, 1847, and was issued for a certain lot,' of land surveyed and designated, as covered by claims sixty-two and sixty-three, in the southwest fractional quarter of fractional section nine, in township eight north, of range eight east, of the fourth principal meridian, in the State of Illinois. Survey on which the patent is founded was approved on the first day of September, 1840 and it is not controverted that the ancestor of the patentees was one of the inhabitants or settlers described in the Act of Congress under-which the patent was^ granted. Two plats were also introduced by the plaintiff, which-were objected to by the defendants, upon the ground that they were certified by the Surveyor of Public Lands, and not by the Secretary of the Treasury. One was a plat of the village of Peoria,, and the other was a plat of claim or lot sixty-three ; but the Court overruled the objections of the defendants, and the plats vere admitted in evidence. Certain portions of Edward Cole’s report, made to the Secretary of the Treasury, on the tenth day of November, 1820, were also offered by the plaintiff to be read in evidence, as appears in the third volume of American State Papers, relative to the public lands, ’Objection
 
 *566
 
 to the admissibility of the volume was duly made by the defendants, on the ground that it was not properly authenticated, but the Court overruled the objection, and so much of the report as relates to the claim in controversy was read to the jury. Various deéds also from the heirs of Antoine Lapance to the plaintiff, or to those under whom he claims, were given in evidence by the plaintiff, and he also introduced a duly certified copy of a certain Chancery proceeding for partition, which resulted in a decree of sale of the interests of several of the parties under whom the' plaintiff, derived his 'title as a purchaser. Those proceedings were introduced to show that the interests of parties owning one-third of the premises in common with the plaintiff were duly sold by a Commissioner of the Court in which the proceedings took place, and that the same became vested^ in the. plaintiff as a purchaser at a legal sale,. Such was the substance of the evidence offered by the plaintiff, as more fully set forth in the transcript. On the other hand, the defendants claimed title under a patent dated the twenty-fourth day of January, 1838, as-issued to Charles Ballance, granting to him the southwest fractional quarter of section nine, in township eight north, of range eight east, in the district of lands subject to sale at Quincy, Illinois, “subject, however, to the rights of any and all persons claiming under the Act of Congress of the third of March, 1823,” to which reference has already been made. They accordingly ■gave the patent in evidence, together with a duplicate of the receipt given by the Receiver of the Land Office, and the certificate of the Register, on which the patent is founded. Relying on these evidences of title, the defendants also offered evidence tending to show that Charles Ballance, or those claiming under him, had been in possession of the premises, claiming title to the same, from 1842 to the commencement of this suit. Much testi mony was taken as to the possession of the premises, but inasmuch as the plaintiff now concedes that the defendants occupied the same from 1842 to the commencement of the suit, the testimony will not be very fully reproduced.
 

 On this state of the case the defendants requested-the Court to instruct the jury: 1. That the title exhibited by them wax
 
 *567
 
 superior in point of law to that exhibited by the plaintiff. 2. That the title of the defendants was a regular chain of title, deducible of record from the United States, and if they believed from the evidence that the defendants, and those under whom they received the possession, had been in actual possession, by residence, of the premises more than seven years immediately preceding the commencement of the suit, and were still in pos session when the suit was brought, then the plaintiff was not entitled to recover in this action. Other prayers for instruction were also presented by the defendants; but in the view we have taken of the case it will not be necessary to refer to any other at the present time. Both of these requests were refused, by the Court, and the jury, among other things, were told: 1. That the defendant, Ballance, acquired no absolute title to the lot in question under his patent from the United States; but that the other title, under the Act of 1823; was the paramount title. 2. That in order to be protected under the law of 1835, he, or those claiming under him, must have had possession by actual residence on the land in controversy for seven years next preceding the commencement of this suit. Under these instructions, and others which need .not be noticed, the jury found that the defendants were guilty' of unlawfully withholding from the possession of the plaintiff so much of claim sixty-three as is covered by the southwesterly half of lot numbered one, in block forty-seven, in Ballance’s addition to the town of Peoria.
 

 1.
 
 Verdict was rendered on the 3d ,day of August, 1857, but the bill of exceptions was not filed in Court until a subsequent day in the same term; and it is contended by the plaintiff that-the record does not show that the exceptions were duly taken before the jury retired from the bar of the Court. But the objection is entirely without merit, so far as respects the prayers for instruction presented by the defendants, and the instruo tions given to the jury, as will appear by an examination of the statement which immediately precedes the bill of exceptions, as well as by the closing paragraph of the same. Just preceding the formal part of the bill of exceptions is the statement in the i ecord that' “ the following exceptions were made by the defend
 
 *568
 
 ants upon the trial of this cause,” and that the same “were allowed by the Courtand immediately following the instructions given to the jury is the additional statement, that the “defendants then and there excepted” to the decisions and rulings of the Court. Undoubtedly the rule is that the record must show that the exception relied on was taken and reserved by the party at the trial; but it is a mistake to suppose that it has ever been held by this Court that it must be drawn out and sealed by the Judge before the jury retire from the bar of the Court. Great inconvenience would result from such a requirement, and in point of fact there is no such rule. On the contrary, it is always allowable, if the exception be seasonably taken and reserved, that it may be drawn out in form and sealed by the Judge afterwards; and the time within which it may be so drawn out and presented to the Court must depend on the rules and practice of the Court, and the judicial discretion of the presiding Justice. Such was the rule laid down by this Court in
 
 United States
 
 vs.
 
 Brietling,
 
 (20 How., 254), and we see no reason to qualify it on the present occasion. See also Phelps vs.
 
 Mayer,
 
 (15 How., 160);
 
 Turner
 
 vs.
 
 Yates,
 
 (16 How., 28).
 

 2.
 
 Certain exceptions were also taken by the defendants to the ruling of the Court in admitting evidence offered by the plaintiff, as before explained, but inasmuch as the objections are the same as those which came before the Court in
 
 Gregg, et
 
 al. vs.
 
 Forsyth,
 
 24 How., 179, we do not think it necessary to give them any further examination, and they are accordingly overruled.
 

 3.
 
 Repeated decisions of this Court also have settled the question that the presiding Justice was correct in refusing to instruct the Jury that the paper title of the defendants was superior in point of law to that of the plaintiff. ■ Although the patent under which the defendants claim is the elder, yet as the patentee took it subject to the confirmed title under which the plaintiff claims, this Court has uniformly held, and now holds, that the latter, independently of any question of adverse possession, must prevail.
 
 Bryan
 
 vs.
 
 Forsyth,
 
 19 How., 334;
 
 Mehan et al.
 
 vs.
 
 Forsyth,
 
 24 How., 175;
 
 Gregg
 
 vs.
 
 Tesson,
 
 1 Black., 150
 

 
 *569
 

 4.
 
 Suit was commenced in this case on the 9th day of July, 18f*5, and the evidence shows that Charles Ballance, or those claiming under him, were in possession of the premises in controversy as early as 1842, and were also in possession when the suit was commenced. Ballance commenced building a dwelling-house on a part of the same quarter section in the year 1842, and in the early part of 1844 moved into it with his family, and since that time has continued to reside in that house. Some of the witnesses testify that he claimed to be the owner of this fractional-quarter as early as 1832, and that he has cultivated part of it from that time to the date of the writ; but it will be sufficient to state that the evidence clearly shows that he has had his residence on the quarter section since the year 1844, and that he, or those claiming under him, have been in the possession of the lot in question in this case throughout the entire period of his residence in his present dwelling-house. Assuming the fact to be so, then, it is clear that the presiding Justice erred in refusing to give the second instruction requested by the defendants, ’ as well as in the instruction given upon that subject. No person who has any right of entry into any lands, tenements - or hereditaments, of which any person may be possessed by actual residence thereon, having a connected title in law or equity from the State or the United States, can make any entry therein under the limitation law of that State passed in 1835, except within seven years of the time of such possession being taken. Sess. Laws 1835, p. 42.
 

 When the patent under which the defendants claim was issued, no survey of any lots granted to the inhabitants or settlers in the village of Peoria had been made. Those persons therefore held but an inchoate right, which must first be surveyed and designated before the right granted to them would supercede the title acquired under the defendant’s patent. They might never make any claim, and in that event the other tide would be valid. Consequently, this Court held in
 
 Bryan et al.
 
 vs.
 
 Forsyth,
 
 19 How., 338, that, subject to that contingency, the patentee under whom the defendants claim took a title in fee till 1840. when the dtle to the village lots was by the survey and
 
 *570
 
 designation then made, ripened into a better title; but the Court also held at the same time that the patentee was a fee. simple title on its face, and as such was sufficient to afford protection to one claiming title under it, if accompanied by proof of such possession for seven years, as is required by the Illinois statute of limitation.
 

 5.
 
 Reference is made by the plaintiff to thv reservation contained in the patent, and the argument is, that the defendants held possession of the land subject to the rights of the plaintiff^ and consequently that their possession was subservient and not adverse to the plaintiff’s title. But the proposition cannot be sustained, as is obvious from the language of the patent. Eee simple title is granted to the patentee and his heirs of the described tract, to have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, subject, however, to the rights of any and all persons claiming under the before mentioned act of Congress. Looking at the language of the patent, it is clear that the saving clause was designed merely to exonorate the United States from any claim of the patentee or his assigns in the event that any other person should prove a superior title. Such was the view taken of that clause by this Court in
 
 Mehan et al.
 
 vs.
 
 Forsyth,
 
 24 How., 178, and in several other cases involving the same question, and we have no doubt that such is the construction of the clause.
 
 Gregg
 
 vs.
 
 Tesson,
 
 1 Black., 150. Applying these principles to the present case, the conclusion necessarily follows, that the presiding Justice erred both in refusing to instruct the Jury as requested, and in the instruction given upon that subject.
 
 Gregg et al.
 
 vs.
 
 Forsyth,
 
 24 How., 174.
 

 6.
 
 Where a quarter section, as in this case, has been subdivided by the occupant and claimant into lots, it is not necessary, under the Illinois statute, in order to secure the benefit of the limitation of seven years, that the claimant should have an actual residence on each lot of the subdivision in the sense in which those terms are ordinarily understood, but it is sufficient if he shows an actual residence for the entire period on some one of the lots claiming the whole under the same title, and
 
 *571
 
 that the lot in controversy was and is in the possession of his tenant under his title, and pursuant' to his claim.
 
 Gregg
 
 vs
 
 Tesson,
 
 1 Black., 150;
 
 Lindor
 
 vs.
 
 Kidder,
 
 28 Ill. R., 51;
 
 Williams
 
 vs.
 
 Ballance et al.,
 
 23 Ill. R., 197;
 
 Gregg et al.
 
 vs.
 
 Forsyth,
 
 24 How., 179. For these reasons the judgment of the Circuit Court is reversed, and the cause remanded, with instructions to issue a new venire..