UNITED STATES v. ALUMINUM CO. OF AMERICA et al.

District Court, S. D. New York. Dec. 4, 1939.

Walter L. Rice, Sp. Asst. to Atty. Gen. (John C. Herberg and F. Gwyn Harper, Jr., both of Washington, D. C., Norman A. Adler, of New York City, James S. Kemper, Jr., Ralph Anderson, Creighton R. Coleman, and Gareth M. Neville, all of Washington, D. C., of counsel), for the United States.

Hughes, Richards, Hubbard & Ewing, of New York City, and Smith, Buchanan & Ingersoll, of Pittsburgh, Pa. (Charles E. Hughes, Jr., Leighton H. Surbeck, and William T. Gossett, all of New York City, and William Watson Smith, Frank B. Ingersoll, and Leon E. Hickman, all of Pittsburgh, Pa., of counsel), for Aluminum Co. of America et al.

Milbank, Tweed & Hope, of New York City (Morris Hadley, Timothy N. Pfeiffer, and Edgar P. Baker, all of New York

City, of counsel), for Aluminium Limited et al.

Baldwin, Todd & Young, of New York City (Roger Sherman Baldwin and Walter W. K. Bennett, both of New York City, and A. L. Nash, of Manitowoc, Wis., of counsel), for Aluminum Goods Mfg. Co.

Hughes, Richards, Hubbard & Ewing, of New York City (Charles E. Hughes, Jr., Leighton H. Surbeck, and William T. Gossett, all of New York City, and John H. Watson, Jr., and M. B. & H. H. Johnson, all of Cleveland, Ohio, of counsel), for Aluminum Manufactures, Inc.

CAFFEY, District Judge.

I am now ready to deal with the question as to the admissibility of Exhibit 1132 for Identification, which has been so fully argued by counsel.

The exhibit consists of four papers: a letter purporting to have been written by the Assistant to the Attorney General, without naming any addressee; two memoranda by Special Assistants to the Attorney General; and what has been referred to as the 1926 Benham report, which appears at pages 1 to 85, with numerous exhibits thereto. The whole makes up a document of 368 pages, coupled with the preliminary letter and the memoranda I have mentioned.

The defendants state that the purpose of their offer is not to establish facts, but that the sole purpose is to use it in support of their denial of the last sentence of paragraph 81 of the bill and in support of their plea of laches introduced orally.

The Government has interposed four grounds of objection: (1) that the exhibit is incompetent; (2) that it is immaterial; (3) that its authenticity has not been shown; and (4) that its identity has not been shown.

I have examined fully the exhibit offered. I have also examined everything to which counsel have called my attention in Exhibits 1140 to 1151 for Identification, as well as numerous other parts.

For a reason which will be given later, the fourth ground of objection may be eliminated. The questions are, therefore, reduced to two: (1) Is the authenticity of the exhibit established? (2) Is it relevant?

The recitals on the face of Exhibit 1132 for Identification are these: (1) It is labeled Senate Document No. 67, Sixty-ninth Congress, 1st Session. (2) It contains a report of Special Assistant to the Attorney General William R. Benham, together with the three introductory papers described above, concerning alleged violation by Alcoa of a Federal court decree dated June 7, 1912. (3) It was ordered to be printed on February 22, 1926, and by inference the order was made by the Senate. (4) It was printed at the Government Printing Office in 1926.

In the Congressional Record of February 22, 1926 (Exhibit 1140 for Identification), under the heading "Aluminum Co. of America (S. Doc. No. 67)", it appears that on that day the Senate ordered Senate Document No. 67 to be printed "as a Senate document" at the Government Printing Office. From statements, by Government counsel it appears that there is in the files of the Department of Justice an unsigned, typewritten copy of pages 1 to 85 of Exhibit 1132 for Identification, which all of us have called the Benham report during the course of our discussions of the objections to the exhibit.

Counsel for the Government also states that, when a search was made during the present trial, no copies of the three papers I have mentioned as embraced in the introductory part of Exhibit 1132 for Identification were found in the files of the Department of Justice.

From an examination of Exhibit 1140 for Identification it appears that on February 22, 1926, the Senate ordered printed the four papers referred to in the Congressional Record as "the report of the Attorney General on the investigation into the Aluminum Co. of America" and as Senate Document No. 67,—this obviously meaning that the printing was to be done at the Government Printing Office. In other words, Exhibit 1132 for Identification is incontrovertibly identified as Senate Document No. 67.

From what has been submitted to me, it seems to me indisputable (1) that there was an original Benham report on the investigation of Alcoa; (2) that every paper included in Exhibit 1132 for Identification was "an official document"; and (3) that the order directing the document to be printed was validly adopted by the Senate in accordance with its rules. Indeed, as I understand, the Government does not controvert the proposition that the Senate printing order was valid.

■ The Government says that the letter from the Assistant to the Attorney General (the first paper in the exhibit) does not show on its face that it was addressed to anybody. This is true; but what of it? I think the fact is utterly without significance. Whether the letter is an official document depends on who signed it and the capacity in which he acted. By the form of the writing it is disclosed that, when he signed, the Assistant to the Attorney General was engaged in the performance of his official duties. What he did was, as I see it, precisely as much official, regardless of whether he addressed the Attorney General or the Senate or the individual Senator who sent the group to the Senate Clerk's desk and asked that it be printed or nobody.

■ The Government next suggests that because February 22, 1926, was a holiday, there is some irregularity about Exhibit 1132 for Identification. Whether the Senate made its order on a holiday seems to me to be wholly immaterial. The day was not dies non. The Senate was regularly in session. It was free to transact business. As I view the matter, it would be a piece of effrontery on the part of the court to go behind what appears in the record or, under the circumstances stated, to hold that the Senate went outside of its powers when it made an order in compliance with its rules.

Exhibit 1132 for Identification was printed at the Government Printing Office. It becomes pertinent, therefore, to inquire into what that institution is. The description of it is found in Title 44 of the United States Code, 44 U.S.C.A. It would not be helpful to set out more than the substance of four of the sections of the title, although there are various other sections which it would be worth while to read as an aid to the interpretation of those four sections.

Section 31 provides for the appointment by the President of a head of the Government Printing Office, subject to confirmation by the Senate. This official is called the Public Printer.

Section 33 defines the duties of the Public Printer. Among these are the following: (1) "to take charge of all matter which is to be printed,"—meaning all printing for the Government; (2) "to cause the work to be promptly executed";

and (3) "to superintend all printing * * * done at the Government Printing Office."

Section 111 provides that "All printing * * * work for Congress * * * shall be done at the Government Printing Office."

Section 142 provides that all publications directed by Congress or by either House of Congress to be printed shall consist of four series. The third consists of a "series of documents other than reports of committees, the orders for printing which originate in the Senate, to be known as Senate documents." The section also provides that "The publications in each series shall be consecutively numbered, the numbers in each series continuing in unbroken sequence throughout the entire term of a Congress."

As of assistance in construing the extracts from the sections I have quoted, one may examine sections 131, 133, 135, 136, 140, 185 and 223.

■ On the basis of the provisions of the statute governing the Printing Office and of the manifest nature of the several papers embraced in Senate Document 67, as dealt with by the Senate itself in its order of February 22, 1926, I feel bound to conclude that Exhibit 1132 for Identification is a public document, lawfully printed at the Government Printing Office in obedience to a valid order made by the Senate.

My attention has been called to various extracts from the Congressional Record running over quite a period preceding and another period following February 22d. I am asked to draw an inference from these that the exhibit for identification is not a public document in the sense of the law.

Various proceedings in Congress, principally debates, disclosed in the extracts referred to show that at the time there was a controversy in Congress about delays or lack of diligence of the Department of Justice with respect to instituting a court action or court actions against Alcoa. As I think, however, the pendency of the controversy or what occurred in regard to it has no bearing whatever on the determination of whether or not Exhibit 1132 for Identification is a public document. It seems to me clear beyond peradventure that what constitutes a public document must be ascertained by examining its contents and the law relating to it.

Thus I am brought to the first question to which an answer is demanded, namely: Has the authenticity of Exhibit 1132 for Identification been established?

I take it that "authenticity", as used in the inquiry, means whether or not the document is shown to be genuine in the same sense that an original, produced and proved, would be genuine or that, when absence of the original being fully accounted for and secondary evidence being introduced which shows that the copy is correct, the copy would be admissible under the secondary evidence rule.

■ After reading all the cases to which my attention has been called by counsel and many more, I am convinced that there is an applicable principle of the law of evidence which is thoroughly settled and which controls my decision; that is, that the authenticity of an official document is sufficiently established when a copy of it is offered which purports to have been printed by authority of the Government. In support of my conclusion I rely on five rulings of the Supreme Court, as follows: Talbot v. Seeman, 1 Cranch 1, at pages 37, 38, 2 L.Ed. 15; Young v. Bank of Alexandria, 4 Cranch 384, at page 388, 2 L.Ed. 655; Watkins v. Holman, 16 Pet. 25, at pages 55, 56, 10 L.Ed. 873; Bryan v. Forsyth, 19 How. 334, at page 338, 15 L.Ed. 674; and Gregg v. Forsyth, 24 How. 179, at page 180, 16 L.Ed. 731.

The opinions in these cases were handed down between 1801 and 1860. So far as I can discover, they have stood without any holding by any court to the contrary. Moreover, while they may be old, some of them have been cited with approval by the Supreme Court itself rather recently; the Watkins, Bryan and Gregg cases in Post v. Supervisors, Amoskeag Nat. Bank v. Ottawa, 105 U.S. 667, at pages 670, 671, 26 L.Ed. 1204, handed down in 1881; and the Bryan case in Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, at page 129, 39 S.Ct. 407, 63 L.Ed. 889, handed down in 1919. Again in Muse v. Arlington Hotel Co., 68 F. 637, at page 649, the Circuit Court for the District of Arkansas in 1895 cited and relied on the Watkins and Bryan cases.

As I conceive, in obedience to the authorities I am compelled to hold that the authenticity of the documents in Exhibit 1132 for Identification is abundantly established.

I might stop here, but I go further. In Wigmore on Evidence, 2d Ed., Vol. 3, Section 1684, the learned author says (citing many authorities): "In general, then, where an official printer is appointed, his printed copies of official documents are admissible. It is not necessary that the printer should be an officer in the strictest sense, nor that he should be exclusively concerned with official work; it is enough that he is appointed by the Executive to print official documents. As for authentication of his copies, it is enough that the copy offered purports to be printed by authority of the government; its genuineness is assumed without further evidence."

I have not had opportunity thoroughly to search the reports of the courts of general jurisdiction of the State of New York. Nevertheless, I have found some decisions of those courts which, as I feel, tend strongly to support the conclusion I have adopted. These are Radcliff v. United Insurance Co., 7 Johns. 38, at pages 50, 51, and Root v. King, 7 Cow. 613, at page 636, affirmed in King v. Root, 4 Wend. 113, 21 Am.Dec. 102. See also Pacific Pneumatic Gas Co. v. Wheelock, 80 N.Y. 278. I have discovered nothing to the contrary in New York.

■ If the New York decisions by courts of general jurisdiction sustain the admissibility of Exhibit 1132 for Identification, then Rule 43(a) of the Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, instructs me to follow their ruling.

There is a portion also of Rule 44(a) of the Rules of Civil Procedure which should be considered. In substance, it provides that authenticity of an "official record" may be evidenced by "an official publication thereof."

■ I think it is clear that each paper embraced in Exhibit 1132 for Identification is "official". It is official in the sense of that word as defined by the Supreme Court; that is, every such paper is work done by a person in the employment of the Government in the course of the performance of the duties of his position. Likewise, I think it incontrovertible that Exhibit 1132 for Identification is an official publication.

■ If the two conclusions on my part just stated be accepted, namely, that the papers are official and that they are now included in an official publication, then it

follows that they may be proved by that official publication provided they constitute a "record" within the meaning of that word as employed in Rule 44(a).

The Report of the Advisory Committee on Rules, as well as the statements of some of the commentators which have been published in book form, indicate, in substance, that Rule 44(a) covers, and is designed to cover the subject matter of numerous sections of Title 28, U.S.C.A. as well as of other titles, of the United States Code dealing with methods of proving documents that originate in a department or branch of the Government. The rule does not interfere with any of the methods prescribed by those sections. Generally they provide for admission in evidence upon certification of a document by some designated official. The rule merely adds another method for authenticating departmental documents. I take it further that the purpose of the rule was to reduce delay and to reduce expense in obtaining from Government departments documents intended to be offered in evidence.

It is interesting to note the phraseology of several of the sections of Title 28 and what they embrace. For example, Sections 661, 662, and 663 refer to department "papers"; Section 670 to "demands" made by a department; Section 695 to department "writings" made in the regular course of business.

If, on a broad interpretation of the word "record", it be concluded that the framers of the rule intended to include all the things mentioned that are covered by the various sections which the committee and the commentators have indicated are designed to be covered, then manifestly it would, in and of itself, establish the authenticity of Exhibit 1132 for Identification. As I have remarked, I have not had opportunity to run down all the court decisions which might be consulted in construing this rule. There are three, however, to which I call your attention, which may be helpful. These are Cohn v. United States, 2 Cir., 258 F. 355, at pages 361, 362; United States v. Harbanuk, 2 Cir., 62 F.2d 759, at page 760; and Whitney v. United States, 10 Cir., 99 F.2d 327, at page 330.

For the several reasons given, I conclude that the authenticity of the exhibit has been established.

We come, therefore, to the second question: Is the exhibit relevant?

The exhibit was offered by the defendants only in support of Alcoa's denial of the last sentence of paragraph 81 of the bill and in support of its contention of laches. There was an explicit disclaimer that it was offered to prove the facts alleged. What was said at pages 22,741-54 in regard to Exhibit 1054, when it was admitted in evidence, is enough to dispose of the question of relevancy of the exhibit now under consideration. This need not be repeated.

■ It is true that the document presently offered is not admissible to prove the facts which it recites. That proposition is sustained by Watkins v. Holman, 16 Pet. 25, at page 56, 10 L.Ed. 873, and by United States v. International Harvester Co., 274 U.S. 693, at page 703, 47 S.Ct. 748, 71 L.Ed. 1302. Nevertheless, as the offer is only for the limited purpose I have stated and is not for the purpose of establishing the truth of its recitals, the general objection of incompetency is not well founded.

■ I have a feeling that probably none of the discussion and controversy with respect to the exhibit was necessary. I say this for the reason, at least as I understand the law, that a court can take judicial notice of what is contained in any Senate document. The decisions of the Supreme Court on that point are numerous. An interesting illustration of the Supreme Court looking at both Senate documents and House documents is in Arizona v. California, 283 U.S. 423, at pages 452, 453, 51 S.Ct. 522, 75 L.Ed. 1154. See particularly notes 3 and 4 where, in his characteristic way, Mr. Justice Brandeis has collected many such citations.

Lastly, let me remark that, as a practical matter, it seems to me that there can be no doubt that Senate Document No. 67, Exhibit 1132 for Identification, which has stood for thirteen years, is a correct copy of the papers and report, all emanating from the Department of Justice, that are included in it. What form in which to have them could be more satisfactory?

The result is that the objections to the exhibit will be overruled and the exhibit will be admitted in evidence for the two purposes I have stated.