## BOLAN v. LEHIGH VALLEY R. CO.
### No. 225, Docket 20936.

Circuit Court of Appeals, Second Circuit.

May 10, 1948.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (William M. Fay and Richard I. Fricke, both of Buffalo, N. Y., of counsel), for appellant.

McElroy, Young & Mahley, of Syracuse, N. Y. (Gordon H. Mahley and J. Murray Dunn, both of Syracuse, N.Y., of counsel), for appellee.

Before SWAN, CLARK, and FRANK, Circuit judges.

FRANK, Circuit Judge.

Appellant relies on four arguments: (1) That there was insufficient evidence to warrant a finding that defendant had violated the Boiler Inspection Act; (2) that the evidence was insufficient to warrant a finding that any such alleged violation constituted the proximate cause of the accident, and that there was no such finding; (3) that the verdict is based solely upon speculation and conjecture; and (4) that, when the jury returned for further instructions, they were improperly charged.

In support of its first argument, appellant relies chiefly on the undisputed fact that the pilot step complied with the Commission's regulation governing such steps. We think such compliance, however, did not relieve appellant of its duty under the Boiler Inspection Act[2] to maintain all appurtenances of its engine (of which the pilot step is one) "in proper condition and safe to operate * * * that the same may be employed in the active service of such carrier without unnecessary peril to life or limb." The Commission's regulation, captioned "Sill-Steps," merely provides for the number, dimensions, location and manner of application of such steps. A step may comply with these directions and yet be in a highly dangerous condition because it is worn or bent. There was testimony from which the jury could have found that such was the case here; and apparently they did so find, since they answered the third interrogatory "No." The statute is to be construed in the light of its humanitarian objectives.[3] Accordingly, if an appurtenance conforms with the I.C.C. regulations but nevertheless violates the Act, the latter must control.

Appellant argues that the jury could not have found that the step was dangerous, because they held that the railroad company had furnished plaintiff with a safe place to work. The judge charged the jury with regard to a safe place that "the locomotive and all its parts and the roadbed and tracks were required to be in a reasonably safe condition," while his explanation of a violation of the statute was a specific discussion of the worn condition of the pilot step. In view of the charge, we do not think the findings were inconsistent. The jury found generally that plaintiff had a safe place to work, but it specifically found that the engine and its appurtenances, including the

---

[2] "The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one, and the carrier is not excused by any showing of care, however assiduous." Brady v. Terminal R. R. Ass'n., 303 U.S. 10, 15, 58 S.Ct. 426, 429, 82 L.Ed. 816.

[3] Lilly v. Grand Trunk Western Ry. Co., 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411.

pilot step, were not "in proper condition and safe to operate without unnecessary peril to life and limb." In other words, their answers amount to a finding that plaintiff was given a safe place to work except for the pilot step.

Appellant's second argument is that there is no evidence or finding that the violation of the statute was the proximate cause of the accident. We think the general verdict a sufficient finding of such causal connection,[4] since the jury was properly instructed that the condition of the engine and particularly the step must have "caused or contributed to the accident." There was also evidence to support a conclusion that the condition of the step and the position of the steampipe under it contributed to the accident. True, plaintiff, while on the stand, stated that his foot had slipped because of a jerk, but he also stated that the accident was "due to the fact that those bolt heads on the top of the pilot step were there," and "That steam pipe had everything in the world to do with the accident."

Appellant objects that the verdict is based on speculation and conjecture. On that subject the Supreme Court has recently said, in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916: "It is no answer to say that the jury's verdict involved speculation and conjecture. * * * Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." In the case at bar there is no complete absence of probative facts. As we have already indicated, the record contains testimony from which the jury could reasonably have drawn the inference of a violation of the Boiler Inspection Act, and that the violation led to the accident. Even if we might have drawn other inferences, we have no power to upset a verdict based on that evidence.[5]

Appellant further argues that, when the jury returned for further instructions, they were improperly charged.[6] The judge's charge at that point was brief and perhaps subject to misinterpretation, but it was not erroneous. Appellant's objection is the sort which ought to have been made at the time, so that the judge might have an opportunity to extend his remarks had he so desired. For his unwarned failure to do so, we will not reverse him. Federal Rules of Civil Procedure, rule 51; cf. United States v. Monroe, 2 Cir., 164 F.2d 471, 477; McDonald v. Jarka Corp., 2 Cir., 144 F.2d 53; Sweeney v. United Feature Syndicate, 2 Cir., 129 F.2d 904.

Affirmed.

---

[4] Federal Rules of Civil Procedure, rule 49(b), 28 U.S.C.A. following section 723c.

[5] Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520.

[6] In his original charge, the judge instructed the jury at length with regard to the Boiler Inspection Act and the railroad's duties thereunder. After the jury had been out about an hour, it returned for additional instructions, and the following colloquy occurred:

"The Foreman: The question we would like to have information on is this third question, your Honor. Shall I read it?

"The Court: Yes.

"The Foreman: 'Was the engine and all its appurtenances, including the pilot step, in proper condition and safe to operate without unnecessary peril to life and limb?'

"The Court: That is a question of fact. You have heard the evidence about it. The evidence is in dispute, so that you will have to resolve that as a question of fact, was it safe for use?

"The Foreman: That is all."